Good morning, your honor. May it please the court, my name is Steve Lagueras. I'm here with Jerome Bowen, and we're representing Southern Nevada TBA Supply Company, TBA, a trailblazing supplier in Ottawa. And Mr. City Manager says it's a pleasure to be here today. I appreciate the opportunity. You're here on the right day. The answer is no, your honor. It's been like this all week. The court of order asks that the court make some decisions in clarification on basically four issues. Number one is whether the plausibility pleading standard has a role in determining a liability insurer's duty to defend. Number two, whether the plausibility standard was applied in a case in a manner that may have been dictated on intent of an insurer's duty to defend. That the policy language at issue here, as with the allegations and the underlying complaints, were sufficient to trigger a duty to defend. And lastly, if justified, I request that this matter be remanded to the district court for further action. Yes, your honor, the court has done so. So, Mr. City Manager, four issues. Yes, your honor. I only heard three. The plausibility pleading standard have a role, if so, was it applied properly, and then remanded. What time is it? I'm sorry, Mr. Chair. Track number four is an issue that's basically just a request for the remand. Right. There's only three issues to this. Okay. The question that we're facing a problem with is that the district court's order has created some confusion regarding the standard for the duty to defend. Because it's the, in this case, we're asking for a controversial rule in our change in law. We're supposed to seek the clarification as to what is the standard for the duty to defend underlying a liability policy. The district court dismissed the balance of suit enacted on this case, which was for Runklefeder to defend. And it did so, as it stated, based upon a plausibility standard. And in doing so, it cited a plausibility standard being, the thing that they have said, The police requirement is that there has to be facts alleged that show a probability or a very long, a recovery's plausible as opposed to merely plausible. It asks for a specific fact showing a recovery's plausible. There's usually, but it's plausible, not plausible. And it's our contention that that is in direct contrast with what is typically the standard for determining an insurer's duty to defend, which in a case like Montrose-Temple Corporation versus Canadian Insurance and many others, calling that the standard is that if there's a possibility for coverage, there should be a duty to defend. That's in direct conflict with the plausibility standard. And so, What are you representing? We represent the insurer. So, how does the plausibility standard make you worse off than the plausibility standard? Because we elect Runklefeder to defend. Yeah. And the court determined that the plausibility standard applied, which is a stricter standard. Violation of the duty to defend. Yes. And that the plausibility standard is stricter because under the typical duty to defend language, it's just a mere possibility of coverage under plausibility. You don't have to show that there's a chance that the claim is plausible and that a recovery is plausible. And I guess the best way to describe it is the duty to defend applies at the outset of the case, whereas the standard for plausibility is presuming, at least in part, that it's already known at some point what the recovery is based on. Maybe you can help me. I have a little trouble with the facts in this case. What kind of business is your client engaged in? Our client earlier was engaged in tire, tire and automobile changes, tires, things of that nature, all over the mall. And it was a big business. There were a number of other entities. And some of those entities that he had are already complained. He has alleged specifically this, that, for example, another tire company, their entity had experienced from 1993 to 1995 a number of environmental leaks into the soil. It's alleged that the dry cleaners at this premises in 1993 sustained over 300 gallons of environmental contaminants into the soil. It's alleged that Sarah specifically had accurate… Yes. …doing business that they used some hazardous substances. And the harm that we're talking about here is a plume of contaminants. Yes. Now, where was that located in relation to your business? No, no. The entity was alleged that the contaminants migrated from the premises to homes in the surrounding area in Las Vegas. And so the problem that we had is that even though there were specific allegations against a number of the defendants that they had accidentally contributed contaminants to the soil, the allegation against our client did not allege that there had been an actual discharge. It alleges that they had been in an investigation of a reported spill, but there's no evidence in the complaint that there was an actual spill. And what was the risk that you were, in your view, you were insuring against? We were insuring against liability arising out of emulsions. We weren't insuring against it. We were relying on, as I said, the coverage applied to damages caused by an occurrence arising out of the name insurer's operations. So, therefore, to the extent that there are specific allegations to sell these entities to actually contribute to an environmental spill, whereas in the case of this insurer, the allegation only was that there had been an investigation with no findings for purposes of defense, we would have argued that there's only simple potential for coverage because the collision and explosion would not apply, number one. And number two, because that policy covers liability arising out of the insurer's operations, to such an extent that it could have been shown that this liability attributed to emulsions because it was at the mall, it was in the same location, there were no allegations that it actually spilled. We believed that there was a defense obligation because the collision and explosion may not have applied under those circumstances. And the policy findings encompassed the allegation of arising out of Well, the pollution exclusion, in this case, applied to any contamination that emanated from the insurer's premises. That's the difference. Your coverage is based upon the pollution emanating from your premises. That's the exclusion. So what's the coverage that you have? Well, the coverage is for liability that is alleged to have arisen out of the insurer's operations. However, if there's a pollution contamination event and it's on the insurer's premises, coverage is excluded. And so what we're suggesting is that because the allegation is unclear as to whether there was a contaminant spilled into this insurer's premises, there was a possibility at the outset that there may be coverage. The pollution exclusion may not have applied. And then we would go to the insurance agreement, which covers it. Where would the pollution come from? Well, if it didn't come from your premises, it's alleged in a complaint that it came from Sears, from Superior Tire, from Dr. Pena, and other sources. And your complaint specifically says that the only allegation against you is in the complaint. The right thing is that there was an investigation. We don't know if it ever happened. The other defenders specifically allege to have contaminated soil. And so, therefore, that raises the possibility that possible pollution exclusion may not have been cited. And again, going back to the insurance agreement, this is liability that arose out of the operations. Objectively, it's merely because he was there and did business in the same location. But there are no specific allegations. What had happened was, following the allegation, following the allegation that there had not been any evidence of a complete spill in 10 weeks, there were allegations that are information and believe all parties were responsible. But that information and belief allegation is directly contradictory to... I apologize. Is that better? Okay. At any rate, the contention that we have raised is that because there's no specific allegation that Ted Weems actually contaminated the soil, merely that there had been an investigation, compared to other defendants that are specifically alleged to have committed an environmental contamination, there was a possibility that the pollution exclusion would not apply. And the insuring agreement, the policy, which is triggered by liability arising out of Ted Weems' operations would open up a potential for coverage. The fact that Ted Weems is being alleged on information or belief that has a duty to contribute as to all the other defendants is contradicted by the specific allegation elsewhere in the complaint that all we know about Ted Weems was that there had been an investigation. So it's our conception that there was a potential for a defense and when the court applied the possibility doctrine here, it eliminated coverage. Based upon a higher standard of cleaning than when we alleged there was a possibility that was what they're applying. All right, counsel, you may cease your time. I hope you get many more questions. Thank you. Good morning. Nicholas Cort, Ted Kurtz, on behalf of the NWU Universal Providers. In regards to duty to defend, insurance company determines that by looking at the allegations of the complaint. And what Universal did at this time, they looked at the allegations of the two third-party complaints, the one filed in federal court and the one filed in state court. I do. ER-373. Oh, wait a minute. That's the page I'm referring to. Yeah. 373 is a federal complaint. Also, a state complaint is that it starts at ER-384. If you look at page 373 of the record, paragraph 45 there says, in 1993, a reported spill at the Tech Week Service Center was investigated. A reported spill at the service center. If you turn over to the state. Counsel makes a distinction. Counsel makes a distinction between the investigation and the actual allegation that there was a spill. What's your response? Yeah, I think that's taken care of. If you look at page 376 of the record, that's paragraph 81 of the federal complaint. It says, at all times relevant herein, there were releases or threatened releases of hazardous substances from facilities operated by the superior parties, the Boulevard Mall operators, Ted Wien's Automotive, Superior Tire, and Terrible Herbs. So there's a direct allegation that there was a pollution spill at the facility operated by Ted Wien's. It's clear in this factual setting that the policy does not provide any coverage for any pollution that is released from the Ted Wien's facility. Yes, I understand that. Because it says that the covered pollution damages means those pollution damages not otherwise excluded which accrue away from the premises owned or operated by you. So I just read this. You're covering all the damages. It has to do with an injury caused by an occurrence arising out of large operations. The pollution damages exclude anything arising out of the operations and in those that accrue away. So what were you insuring with these pollution damages? Well, that's an interesting question because the Ted Wien's operations, those tire automotive stuff, they're repairing an automobile. And as part of that repair, there's a pollution spill that occurs away from the premises. Or if Ted Wien sends out a truck to repair an automobile, or an oil release or something like that. That's what you're insuring. That's what I'm understanding, yeah. And also the completed operations, if Ted Wien's completed an operation on a vehicle and then had a pollution spill or something, that would be covered. The pollution damages has to occur away from the premises. And if the pollution spill occurs on the premises, there's no coverage. And that's why I said it's complete. There was a pollution spill at this Ted Wien's premises. And as a result, that contributed to this pollution plume. Isn't that a standard policy that with exclusion, that it would cover the whole, not the exclusion, but the pollution coverage that just relates to something driving around in the countryside and not to what happens? Well, there's all kinds of scenarios where a pollution spill can occur away from their premises. My question was, is this a cloud analysis? Is this an observation? I do not know the answer to that, Your Honor. I assume that it is because that's in the universal policies that I have seen. So... So this pollution spill from the premises has alleged to contribute to this underlying pollution plume. And there are allegations that this pollution spill also... pollution spills occurred in other businesses. The Sears and the Goodyear store. But Ted Wien's did not have any type of relationship with them. Those were separate, independent businesses. This allegation of drug liability that's based upon their eight separate contributions to this pollution plume does not indicate that there's any type of relationship, that Ted Wien's was responsible for those alleged pollution spills and those other indicators. He purchased insurance to cover, Here he is running operations of a company that is engaged in the use of oil and all kinds of other substances that can leak into the ground. How could he purchase coverage to cover his potential liability for those kinds of events? There would be an endorsement that he could purchase that would provide coverage for pollution spills originating from Ted Wien's business. That would change the policy language. We feel that the underlying... since the duty to defend is based upon these underlying third-party complaints, that the district court was correct in dismissing this complaint just because you can't go back and change the underlying third-party complaints. That is what this duty to defend is based upon. Do you think there's a difference between a possible and a possible? Well, the potential for coverage is based upon review of the underlying third-party complaints. And what you can find by Ted Wien's alleges is that Universal should have defended based upon allegations of the third-party complaints. But since third-party complaints do not describe a potential for coverage, Universal was correct. That's my position. And since Universal was correct, Ted Wien's complaint is saying that... why I'm here, why I'm suing Universal is because there was a duty to defend based upon those underlying complaints, which we say there's not. So Ted Wien's complaint does not state a plausible claim against Universal because the underlying third-party complaints do not describe a potential for coverage. It would not be a possible claim. It would not be a possible claim. We feel the district court was correct in its order, and we ask that it be disordered from those decisions. Thank you. Thank you, counsel. Hello? Can you find me on this? I can. Do you have one minute left? One minute left. First of all, the allegations in the complaint clearly state what I indicated earlier. There's absolute allegations of pollution, actually, not on the part of Ted Wien. I understand that. I understand that. Those allegations appear in court information only if they appear in a group format. There's a contradiction in the complaint itself as to whether this could have happened, such as to propose equal danger for coverage that may have been subject to a duty to defend. As far as additional pollution coverage by endorsement, the cost would have been virtually prohibitive for a small business that shares companies that are in the business of ensuring pollution exposure. This environmental contamination did not, according to the complaint, at least occur on the premises of Ted Wien. It migrated, but only other parties were alleged to have contributed to it. The bottom line is that the allegations allow a finding under the duty to defend standard, which is a possibility of coverage that did show up in a defense. In short, it could have gone ahead and defended under a reservation. It could have gone ahead and filed a declaratory written action. It could have filed a bus reservation defense. Instead, it just walked away from the defendant and let him go. I don't know. We understand your position, Mr. Counselor. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Schroeder, Rawlinson, Stafford